IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF NEW MEXICO


**DENNIS PETSCHE,**

        **Petitioner,**

    vs.                                                      **Civ. No. 00-1736 MV/LCS**

**LAWRENCE TAFOYA,**

        **Respondent.**

**MAGISTRATE JUDGE'S SECOND PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court upon Petitioner's Amended Petition for Writ of Habeas Corpus pursuant to § 2254 filed October 3, 2001 *(Doc. 36)*. Petitioner filed a Memorandum in support of his Amended Petition on July 23, 2003 *(Doc. 46)*; Respondent filed a Response to the Amended Petition on October 22, 2002 *(Doc. 56)*; and Petitioner filed a Reply on November 25, 2002 *(Doc. 57)*. Respondent filed a Motion to Dismiss the Amended Petition with Prejudice on July 23, 2002 *(Doc. 48)*; Petitioner filed a Response to the Motion to Dismiss on August 12, 2002 *(Doc. 53)* and Respondent filed his Reply on November 25, 2002 *(Doc. 58)*. Respondent also alerted the Court to the accidental omission of page 23 from his memorandum brief, and supplied the missing page to the Court on November 27, 2002 *(Doc. 58)*. Respondent filed a Motion to Strike Attachments to Petitioner's Memorandum Brief in Support of Petitioner's Petition on July 26, 2002 *(Doc. 49)* and Petitioner filed a Response in Opposition to the Motion to Strike on August 12, 2002 *(Doc. 52)*. Upon consideration of the Amended Petition, the

1

Motion to Dismiss, the Motion to Strike, the memoranda, the responses, the replies, and the applicable law, the Court recommends that the Motion to Dismiss the Amended Petition With Prejudice be GRANTED; that the Motion to Strike be GRANTED, and that the Amended Petition for Writ of Habeas Corpus be DISMISSED WITH PREJUDICE.

### PROPOSED FINDINGS

1.  Petitioner, then proceeding *pro se* and *in forma pauperis,* filed his original Petition for Writ of Habeas Corpus on December 12, 2000 *(Doc. 1)*. The Attorney General filed a Motion to Clarify Petition on January 25, 2001 *(Doc. 12)*, which the Court granted. The Court thereafter set a briefing schedule, and allowed Petitioner to clarify his petition *(Doc. 13)*. The Magistrate Judge filed his Proposed Findings and Recommendation on July 5, 2001 *(Doc. 27)*. By Memorandum Opinion and Order filed August 21, 2001 *(Doc. 30)*, the District Judge rejected the Magistrate Judge's Proposed Findings and Recommendation, appointed counsel for Petitioner, and ordered that the transcript of the state evidentiary hearing be made a part of the record *(Doc. 30)*. Respondent filed a Motion for Reconsideration of the Memorandum Opinion and Order on September 6, 2001, which was denied by the District Judge on March 6, 2003.

2.  Petitioner, proceeding through counsel, filed an Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 by a Person in State Custody on October 3, 2001 *(Doc. 36)*. Petitioner is currently incarcerated pursuant to a judgment of conviction entered on March 12, 1998 in Cr. No. 95-2848 in the District Court of the County of Bernalillo. Amended Petition at 2; Answer Ex. A; Record Proper ("RP") 219. Petitioner is serving a sentence of 42 years' imprisonment, to be followed by two years of parole. Amended Petition at 2. Petitioner pled no contest to two (2) counts of child abuse resulting in death or great bodily harm; one (1)

count of child abuse not resulting in death or great bodily harm; and one (1) count of aggravated battery. Amended Petition at 2; RP 178-180. Petitioner pled no contest to four counts of the indictment in return for the dismissal of six additional counts. Amended Petition at 2; Answer Ex. B; RP 2-15. The plea agreement stated that there was no agreement as to sentencing, except that Petitioner could receive any sentence from probation up to 42 years in prison. Amended Petition at 2; Answer Ex. B., RP 179. The plea agreement precluded an appeal. Amended Petition at 3; Answer Ex. B, RP 173. Petitioner has exhausted his claims in state court. Answer at 1.

       3.      Petitioner filed a Motion/Request for Withdrawal of Plea *pro se* on November 20, 1997, which was denied. RP 183-185. Petitioner's counsel filed a Motion to Reconsider Sentence on June 9, 1998 seeking to bring additional mitigating factors to the Court's attention. RP 222. Kathleen Rhinehart, Petitioner's counsel, argued on Petitioner's behalf at a hearing on September 21, 1998. *See generally,* Tr. of September 21, 1998 hearing ("Tr. 9/21/98"). The Court granted Petitioner's Motion and reduced Petitioner's sentence by 4 ½ years. RP 231; Tr. 9/21/98 at 3.

       4.      Petitioner thereafter filed a petition for writ of habeas corpus on February 2, 1999 in the Bernalillo County District Court and an Amended Petition on March 5, 1999. Amended Petition at 3; Answer Ex. D and E; RP 236-260, 268-298. In his state petition for writ of habeas corpus, Petitioner raised three claims: first, ineffective assistance of counsel deprived petitioner of his right to a speedy trial; second, ineffective assistance of counsel rendered petitioner's no contest plea involuntary; and third, denial of right to counsel, conflict-free counsel and ineffective assistance of counsel regarding petitioner's motion to withdraw his plea. Amended Petition at 3; Answer Ex. E. Petitioner was represented by counsel in making his Amended Petition for Writ of

3

Habeas Corpus.  Answer Ex. E.

     5.     The state habeas petition was denied on April 21, 1999.  Amended Petition at 3; Answer Ex. F.  Petitioner filed a motion for reconsideration on May 5, 1999. Answer Ex. G. Thereafter, Petitioner received an evidentiary hearing on his state habeas petition on August 30, 1999 and again on March 10, 2000.  Amended Petition at 3; *see also* Transcript of August 30, 1999 hearing ("Tr. 8/9/99") and Transcript of March 10, 2000 hearing ("Tr. 3/10/00"), before the Honorable Neil Candelaria .    The Court entered Findings and Conclusions of Law on April 7, 2000, specifically finding that the performance of Petitioner's counsel did not fall below that of a reasonably competent attorney; and further finding that counsel's performance, if it was deficient, did not prejudice the Petitioner.  Answer Ex. J; RP 426.  Thereafter, Petitioner filed a petition for writ of certiorari in the New Mexico Supreme Court on May 8, 2000,  which was denied on May 25, 2000.  Amended Petition at 4. Answer Ex. K and L.

     6.     Petitioner's Amended Petition for Writ of Habeas Corpus pursuant to § 2254 *(Doc. 36)* sets forth three claims:  first, ineffective assistance of counsel deprived petitioner of his right to a speedy trial; second, ineffective assistance of counsel rendered petitioner's no contest plea involuntary due to (i) inadequate investigation; (ii) failure to explain meritorious defenses, and (iii) misrepresenting the consequences of the plea; and third, denial of right to counsel, conflict free counsel, and effective assistance of counsel regarding petitioner's motion to withdraw his plea. Amended Petition at 6-8.

     7.     Because Petitioner filed his federal habeas petition after the effective date of the Antiterrorism and Effective Death Penalty  Act of 1996 (AEDPA), the petition is ruled by its provisions. *See Williams v. Taylor*, 529 U.S. 362, 402, (2000).  Under AEDPA the standard of

review for a given claim for relief depends on whether or not the state courts adjudicated the claim on its merits. *See generally, Williams,* 529 U.S. 362; 28 U.S.C. § 2254(d)(1). If the state courts decided a claim on its merits, the Court may grant habeas relief only if the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the Court." 28 U.S.C. § 2254(d)(1). The Court must presume that the factual findings of the state court are correct, unless they are rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). If the state court addressed a claim under an improper legal standard, however, the Court is "unconstrained by AEDPA deference." *Revilla v. Gibson,* 283 F.3d 1203, 1220 n.14 (10th Cir. 2002), *petition for cert. filed*, U.S.L.W. (Sept. 9, 2002) (No. 02-6372).

8.  The test for making a claim of constitutionally ineffective assistance of counsel was set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*, a petitioner must satisfy a two-part test in order to prevail on an ineffective assistance of counsel claim. *Strickland,* 466 U.S. at 687-88. First, the petitioner must demonstrate that his attorney's "performance was deficient" and "fell below an objective standard of reasonableness." *Id*. In applying this test, the Court must give considerable deference to an attorney's strategic decisions and "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. In applying the *Strickland* test, "[j]udicial scrutiny of counsel's performance must be highly deferential . . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the

circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* To succeed under the first prong, a petitioner must overcome the presumption that counsel's conduct was constitutionally effective. *Hung Thanh Le v. Mullin*, 311 F.3d 1002, 1025 (10th Cir. 2002). For counsel's performance to be constitutionally ineffective, it must have been "completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy." *See Hoxsie v. Kerby,* 108 F.3d 1239, 1246 (10th Cir. 1997) (quoting *Hatch v. Oklahoma*, 58 F.3d 1447, 1459 (10th Cir. 1995)).

      9.      Second, a habeas petitioner must demonstrate that the trial counsel's deficient performance prejudiced him, which requires a showing that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

      10.     As the Supreme Court recently noted:

under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. The federal habeas scheme leaves primary responsibility with the state courts for these judgments, and authorizes federal-court intervention only when a state-court decision is objectively unreasonable.

*Woodford v. Visciotti*, ___ U.S. __, 123 S. Ct. 357, 361 (2002). Moreover, "it is the habeas applicant's burden to show that the state court applied Strickland to the facts of his case in an objectively unreasonable manner. An 'unreasonable application of federal law is different from an incorrect application of federal law.'" *Woodford*, 123 S.Ct. at 360 (citing *Williams,* 529 U.S. at 410). The Court must "presume state court factual findings are correct, absent clear and convincing proof to the contrary." *Romano v. Gibson*, 278 F.3d 1145, 1150 (10th Cir. 2002)

6

(citing 28 U.S.C. § 2254(e)(1)). The burden is thereafter placed on the petitioner to rebut that presumption with clear and convincing evidence. 28 U.S.C § 2254(e)(1); *Hooper v. Mullin,* 314 F.3d 1162, 1167 (10th Cir. 2002).

    11.    The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58(1985). As the Supreme Court noted in *Hill,* "[i]n the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth . . . . The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58 (internal citations omitted). The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Fields v. Gibson*, 277 F.3d 1203, 1213 (10th Cir. 2002) (quoting *Hill*, 474 U.S. at 56). In *Miles v. Dorsey,* the Tenth Circuit rejected a claim that a defendant's no contest plea was coerced where counsel attempted to persuade the defendant that a no contest plea was in his best interest. *Miles v. Dorsey,* 61 F.3d 1459, 1470 (10th Cir. 1995), *cert. den'd*, 516 U.S. 1062 (1996).

    12.    At the hearing on the merits, the presiding judge stated "let me say that I do not find Ms. Rhinehart's performance fell below that of a reasonably competent attorney. And even if I were to find that I wouldn't find that any deficient performance prejudiced the defendant in any way." (Transcript of March 10, 2002 hearing before the Honorable Neil Candelaria (hereinafter

"Tr. 3/10/00") at 22). Judge Candelaria set forth his reasons for his conclusion, finding that "Ms. Rhinehart, she reviewed the discovery in this case, which was quite extensive, which she had filed several motions on the defendant's behalf, motions to compel evidence, to preclude prejudicial evidence, to sever counts, to dismiss for preindictment delay, just to name a few, and that she was prepared to go forward on those motions and to argue those motions." Tr 3/10/00 at 22. Judge Candelaria further found that Ms. Rhinehart "weighed the case and based upon her review of the discovery" had discussed it with the Petitioner. Tr. 3/10/00 at 22-23. Judge Candelaria found that although Ms. Rhinehart did not interview the witnesses, she stated that she felt that "the interviews would not have deviated from the statements and information that she had in her discovery." Tr. 3/10/00 at 23.

   13.   With regard to Petitioner's plea, Judge Candelaria found that Ms. Rhinehart felt that the Petitioner understood the plea. Tr. 3/10/22 at 23. Judge Candelaria noted that Ms. Rhinehart testified that she had explained the plea to Petitioner, that she had never told him that he would get probation or the death penalty, and that she advised him of the possible penalties. Tr. 3/10/00 at 23. Judge Candelaria noted that he did "have problems with the [Petitioner's] credibility when he said that he thought a no contest plea meant guilty, and when he testified that he was being told by his attorney what to say" and further noted that the record of the plea hearing indicated that Petitioner "fully understood and was well aware of the situation." Tr. 3/10/22 at 23-24.

   14.   With regard to Petitioner's claim that he received ineffective assistance of counsel in protecting his right to a speedy trial, Judge Candelaria found that Ms. Rhinehart was not ineffective, noting that "with a case that's become as complex as this, it takes time to review, time

8

to go through the information, and certainly the attorney needed that time to do that." Tr. 3/10/00 at 24.  Judge Candelaria further found that Petitioner was not prejudiced by Ms. Rhinehart's performance with as to the speedy trial issue. *Id*.

15.	With regard to Petitioner's claim of ineffective assistance of counsel as related to Petitioner's attempt to withdraw the plea, Judge Candelaria found that "[t]here is nothing really that convinces me that Ms. Rhinehart in any way abandoned [Petitioner] or took an adverse position which would create a conflict of interest."  Tr. 3/10/00 at 24.

16.	Judge Candelaria specifically found that the plea was not misrepresented to the Petitioner.  *Id*. at 24.  He concluded that Ms. Rhinehart "had done enough that a reasonable competent attorney would have done under the circumstances" and based on these findings of fact and conclusions, denied Petitioner's petition for writ of habeas corpus.  Tr. 3/10/00 at 23 and 25.  Judge Candelaria's conclusion that Petitioner's counsel's performance was not deficient was not "contrary to, or [did not] involve[] an unreasonable application of clearly established Federal law as determined by the Supreme Court." *Fields,* 277 F.3d at 1217 (quoting 28 U.S.C. § 2254(d)(1)).

17.	A review of the Record Proper indicates that the first trial setting was delayed because of illness of the trial judge (RP 39)(trial extended to August 13, 1996).  The parties further stipulated to extend the trial time to February 13, 1997 because of the complexity of the case and the amount of discovery. (RP 97-100).  The trial was again continued because Petitioner's counsel was expected to deliver a child and because of the complexity of the case and the amount of discovery.  (RP 103, 109)(trial continued to August 13, 1997).  The parties sought to delay the time for trial until February 13, 1998 because they were still obtaining expert

witnesses and Petitioner's counsel sought further forsenic evaluation of Petitioner, but the stipulated request was denied (RP 115-116, 121).  However, upon a Motion for Reconsideration filed by Petitioner's counsel, the Court granted the request and extended the time for trial to November 13, 1997. (RP 125).

18.     The record also demonstrates that Petitioner's counsel filed numerous motions on Petitioner's behalf, including a Motion in Limine and for Notice of the State's Intention to Rely Upon Other Bad Act's Evidence (RP 129), a Motion to Request that the State Provide Notice of Intention to Use Evidence (RP 132), a Motion to Compel Election and to Dismiss (RP 134), a Motion to Dismiss for Pre-Indictment Delay (RP 136), a Motion to Suppress Oral and Written Statements (RP 138), a Motion to Compel Disclosure of Records and Impeaching Information (RP 141), a Motion for Psychiatric Records (RP 144), a Motion for Continuance (RP 146), a Motion to Sever Counts of Indictment (RP 148), a Motion to Take Deposition (RP 159).   The motions were set for hearing before the trial judge on October 28, 1997 (RP 175).  However, at the time of the motions hearing, Petitioner signed the plea agreement and entered a no contest plea.

19.     At the hearing wherein Petitioner entered his no contest plea, the judge showed the Petitioner the plea agreement, and described on the record each of the charges to which Petitioner was pleading. *See* Transcript of October 28, 1997 hearing ("Tr. 10/28/97") at 3-4.  The Petitioner stated that it was his understanding that he was pleading no contest to those charges.  Tr. 10/28/97 at 4.  The Court noted that the two charges of child abuse resulting in death or great bodily harm "carry presumptive sentences of 18 years in the Department of Corrections, no more than 24 or less than 12. And these cannot be suspended or deferred.  The discretion I would have

10

in this case is between 12 – as to these charges between 12 and 24 years. You understand that?" Tr. 10/28/98 at 4. Petitioner answered "Yeah, I do." *Id*. The Court then described the additional charges and their presumptive, minimum, and maximum sentences. Tr. 10/28/98 4-5. The Court again asked Petitioner if he understood. *Id*. at 5. Petitioner responded "Yes, I do." *Id*. The Court further noted that there was no agreement as to sentencing and asked if Petitioner understood. Tr. 10/28/98 at 5. Petitioner stated that it was his understanding as well. *Id*. The Court asked Petitioner whether anyone had promised him anything to get him to plead no contest, and whether anyone threatened him or coerced him. *Id*. The Petitioner said no one had. *Id*. The Court then went through each count and asked Petitioner for his plea. Tr. 10/28/98 at 5-7. The Petitioner individually pled no contest to each charge. *Id*. The Court asked Petitioner whether he understood the rights he was giving up by pleading, and asked Petitioner if he understood each one. Tr. 10/28/98 at 9-10. Petitioner stated that he did. *Id*. The Court queried whether Petitioner was on a medication. *Id*. Petitioner stated that he was not. *Id*. The Court also asked Petitioner "Have you discussed with Ms. Rhinehart, as your attorney, the facts of your case and this agreement that you've signed." Tr. 10/28/98 at 11. Petitioner stated that he had. The Court queried whether Petitioner was satisfied with the advice he had been given in this case; the Petitioner affirmed that he was. *Id*. The Court also asked Ms. Rhinehart if she had investigated all the allegations, if she had told her client the possible defenses to the charges that he had pled no contest to, and whether Ms. Rhinehart concurred with the plea. *Id*. Ms. Rhinehart stated that she had investigated the allegations, told her client of the possible defenses and concurred with the plea. *Id*. The Court asked Petitioner if he had any questions. Tr. 10/28/98 at 11-12. Petitioner stated the he did not. *Id*. at 12. The Court therefore found that Petitioner's plea of no contest

11

was entered freely and voluntarily, that Petitioner knew what his rights were and waived those right voluntarily. *Id.*

20.     Petitioner filed a Motion/Request for Withdrawal of Plea *pro se* on November 20, 1997, which was denied. RP 183-185. The Court held a hearing on the Motion on March 12, 1998. *See generally,* Transcript of March 12, 1998 Hearing ("Tr. 3/12/98"). At the hearing, the Court noted "there is basically the pro se motion for withdrawal of the plea. I have read that and will make part of the record, and the motion is denied. I have read the record. Your plea was entered voluntarily and there was a substantial factual basis for the plea, and the petition to withdraw the plea is denied." Tr. 3/12/98 at 2. Ms. Rhinehart then argued on behalf of Petitioner, asking that the Court consider the Petitioner's history of certain mental illnesses, asked that the Court run the sentences on the charges concurrently, and asked that the Court consider leniency in sentencing the Petitioner. Tr. 3/12/98 at 4-6. The Court thereafter sentenced Petitioner to 18 years for each of the first-degree felonies and three years for each of the third-degree felonies, each to run consecutively, for a total of 42 years in the Department of Corrections.

20.     After a hearing on the merits of Plaintiff's state habeas claims, the trial judge specifically found that the performance of Petitioner's trial counsel did not fall "below that of a reasonably competent attorney." Tr. 3/10/22 at 22. Judge Candelaria further found that *even if* the performance of Petitioner's trial counsel was deficient, such performance had not prejudiced the defendant in any way. *Id.* (emphasis supplied). Judge Candelaria's conclusions were not contrary to or did not involve an unreasonable application of clearly established federal law. *Fileds*, 277 F.3d at 1217. This Court must "presume state court factual findings are correct,

absent clear and convincing proof to the contrary." *Romano,* 278 F.3d at 1150 (citing 28 U.S.C. § 2254(e)(1)). A review of the record indicates that Petitioner has failed to rebut that presumption with clear and convincing evidence. *Hooper v. Mullin,* 314 F.3d 1162, at 1167. To be constitutionally ineffective, the conduct of Petitioner's trial counsel "must have been completely unreasonable, not merely wrong." *Moore v. Gibson*, 195 F.3d 1152, 1178 (10th Cir. 1999), *cert. den'd*, 530 U.S. 1208 (2000). As noted above, Petitioner's counsel reviewed thousands of pages of discovery, prepared several pre-trial motions on his behalf, and successfully argued for the judge to reconsider the sentence imposed.   Petitioner's claims were presented at both the Motion to Withdraw his plea and at the two evidentiary hearings on his petition for writ of habeas corpus. Judge Candelaria measured the conduct of Petitioner's trial counsel against the standard set forth in *Strickland*, and incorporated this standard into his oral and written findings. Judge Candelaria addressed the merits of each of the three claims raised by Petitioner in his Amended Motion.

21.  In making his findings and conclusions on whether Ms. Rhinehart provided ineffective assistance of counsel rendering the Petitioner's plea involuntary, Judge Candelaria noted that "[w]hat the Court has to consider, of course, in this case is if this defendant would have plead [sic] had Ms. Rhinehart done those things that [Petitioner's habeas counsel] thinks she should have done, interviewed the witnesses, obtain an expert witness, those kinds of things, if he would have plead [sic]." Tr. 3/10/00 at 19. Judge Candelaria noted that at the time of the plea, Petitioner "was advised of all of his rights under 5-303. He was told he had a right to trial. He was told he had a right to take an appeal and he was giving up that right. He was told he could ask questions.. He was asked if he had any questions. He didn't have any questions. He was

13

asked if he was on any medication.  He said he was not on any medication." Tr. 5/10/00 at 19.

Judge Candelaria found that "[t]he record certainly at the plea, itself, indicates [Petitioner] fully

understand and was well aware of the situation, so I find also that the plea was not

misrepresented to him in any way." Tr. 5/10/00 at 24.

22. In making this finding, Judge Candelaria thus applied the proper constitutional

standard.  Tr. 3/10/98 at 22.  His findings on the merits do not constitute an unreasonable

application of federal law.  As such, Petitioner is not entitled to relief on his ineffective assistance

of counsel claims.

23. Respondents also filed a Motion to Strike Attachments to Petitioner's

Memorandum Brief in Support of Petition, filed July 26, 2002 *(Doc. 49).*  Respondents request

that this Court strike the approximately 83 pages of what appear to be medical articles, an excerpt

from a medical dictionary, articles from various internet websites, excerpts from partially

identifiable books, and abstracts of medical articles. *See* Petitioner's Memorandum Brief in

Support of Petitioner's Petition, Attachments "A" - "K" *(Doc. 46).*

24. Petitioner inexplicably argues that D.N.M. LR-Civ. 10.5, which provides that

"[e]xhibits to a motion, response, or reply, including excerpts from a deposition, must not exceed

fifty (50) pages unless all parties agree otherwise. . ." does not apply to the documents which he

has attached to his memorandum brief.  Petitioner opines that the limitation of D.N.M. LR-Civ.-

10.5 "is meant to apply only to matters of evidence. . . Mr. Petsche has provided copies of the

articles merely for easy reference by this Court." Pet. Response to Resp. Motion to Strike at 2.

Petitioner argues that the various items provided by the court "examined in light of the record,

help[] to demonstrate that a reasonable, informed, concerned counsel would have advised Mr.

Petsche that he had viable defenses to the charges" and concludes that "[h]ad Mr. Petsche been adequately advised he would not have entered into the plea agreement."  Pet. Response to Resp. Motion to Strike at 3.  Petitioner refers to and relies upon the various attachments to "contradict the state's claim that smothering cannot be diagnosed at an autopsy," to explain accidental causes of children's tibial fractures, to argue that "the state could not prove Sara Ann's leg fracture constituted 'great bodily harm' as defined in N.M. Stat. Ann. § 30-1-12(A)," to argue with the relative strength of the state's Munchausen syndrome by proxy theory[1], and to provide " a strong innocent explanation for the premature births of Sara Ann and Matthew Petsche," among other purposes.  *See* Pet. Response to Motion to Strike at 2-6.  Petitioner argues that "[t]his Court should not decide the grounds raised in Mr. Petsche's habeas petition in ignorance of the publicly available, noncontroversial, information that relates to the critical medical issues in this case. . ."

      25.      However, Petitioner's counsel misapprehends the issue before the Court.  Because there was a decision on the merits in the state court, the Court's task is limited pursuant to *Williams v. Taylor*, 529 U.S. 362, 402 (2000) and 28 U.S.C. §§ 2254(d)(1) and 2254(e)(1). Petitioner must satisfy a two-part test in order to prevail on his ineffective assistance of counsel claim:  he must demonstrate that his attorney's performance was deficient and fell below an objective standard of reasonableness *and* Petitioner must show that he was thereby prejudiced. *Strickland*, 466 U.S. at 687-88.  In addition, Petitioner must show that but for counsel's ineffective assistance, he would not have pled no contest and would have insisted on going to

---

[1] Munchausen syndrome by proxy is "a form of child maltreatment or abuse inflicted by a caretaker (usually the mother) with fabrications of symptoms and/or induction of signs of disease, leading ti unnecessary investigations and interventions, with occasional serious health consequences, including death of the child."  STEDMAN'S MEDICAL DICTIONARY 1736 (26th ed. 1995).

trial. *Hill*, 474 U.S. at 54. As previously noted, Judge Candelaria's conclusion that Petitioner's counsel's performance was not deficient was not contrary to, or did not involve, an unreasonable application of clearly established Federal law as determined by the Supreme Court. *Fields*, 277 F.3d at 1217. Moreover, Judge Candelaria found that Petitioner's plea was knowing and voluntary. The medical information attached to Petitioner's Memorandum in support of his petition is first not clearly "uncontroversial" as characterized by Petitioner; secondly, the information is not at all helpful to the Court in applying the relevant standard; thirdly, the information is not even readily identifiable nor is the information authenticated (the sources of the information are not provided; only abstracts of some items are provided (rather than full articles) and portions of books are provided out of context and without bibliographical information). The material is not relevant to the Court's inquiry into whether Petitioner's trial counsel provided him with constitutional ineffective assistance under *Strickland*, given the decision of the state court on the merits of Petitioner's claims, and given the factual findings entered by the state court. Moreover, the information provided does not demonstrate that Petitioner would have chosen not to enter a plea of no contest. Additionally, Petitioner's argument that D.N.M. LR-Civ. 10.5 does not apply to his attachments is unpersuasive. Although the Court has reviewed the information provided, the Court finds that the Motion to Strike is well-taken, and recommends that the Motion be GRANTED.

## **RECOMMENDED DISPOSITION**

I recommend GRANTING Respondent's Motion to Dismiss Filed July 23, 2002 *(Doc. 48)*; and DISMISSING WITH PREJUDICE Petitioner's Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 filed October 3, 2001 *(Doc. 36)*. I further recommend

GRANTING Respondent's Motion to Strike Attachments to Petitioner's Memorandum Brief in Support of Petition, filed July 26, 2002 *(Doc. 49)*.   Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C).  Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102.  A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**